LANDRY, Judge.
Defendants, American Employers Insurance Company (American), PHP, Inc. (PHP), and R. W. Inns of Louisiana, Inc. (R-W Inns), appeal adverse judgments of the trial court in favor of plaintiffs, Billy B. Gross (Gross) and Superior Concrete Finishers, Inc. (Superior), for labor and materials furnished by plaintiffs on certain construction projects undertaken by South-coast Contractors, Inc. (Southcoast) as prime contractor whose performance bond was written by American. We affirm.
By verbal agreement with Southcoast, Gross subcontracted to tape, float, texture and paint the sheetrock ceilings and walls, do certain exterior painting, install ceramic bath tile, soap receptacles and grab bars, and clean windows, baths, sinks and floors and vacuum carpeting in the Maison Terrebonne Apartments (Apartments) owned by PHP and Rodeway Inn (Rode-way), a motel owned by R-W Inns, situated in Houma, Louisiana. Gross also subbed the work of laying the forms for and finishing the surface of the concrete parking area of the motel project. With the full knowledge and consent of Southcoast, Gross resubbed the job of finishing the parking area to Superior.
Gross sought recovery of the sum of $9,120.86 from the named defendants and *385 Southcoast, together with recognition oí his recorded lien and the privileges resulting therefrom. The trial court awarded Gross $8,914.86. Gross has neither appealed nor answered Appellants’ appeal. Superior was awarded judgment below in the sum of $1,536.88. Judgment was rendered below against Southcoast by default inasmuch as said defendant made no appearance. Southcoast has not appealed the judgment against it. Appellants have bonded plaintiffs’ liens and resist plaintiffs’ claims on the grounds that Gross did not complete his contract obligation, and that a considerable portion of the sheetrock finishing and painting work was performed in an unworkman-like manner and had to be redone at considerable expense to the respective owners. R-W Inns also contends the paving of its parking area was totally unacceptable due to inferior workmanship.
The record discloses that Gross commenced work on the two projects on an undisclosed date in 1966. It also appears that by late November, 1966, time became an important factor in that the prime contracts were due to be completed by about the end of December, 1966, and the owners were anxious to take possession, especially of the motel. On behalf of Southcoast, construction was supervised by its President, Clarence “Boots” Pruyn, Jr., his father, Clarence Pruyn, Sr. (now deceased) and Southcoast’s Superintendent, Bill Jenkins. During November and December, 1966, the work was supervised principally by the older Pruyn and Jenkins because Boots Pruyn was then engaged in handling a project for Southcoast in New Orleans, Louisiana. In late December, 1966, John F. Higgins, a stockholder in both PHP and R-W Inns, commenced assisting in supervision of the activities at both construction sites apparently with the view of expediting construction. When Higgins observed Gross and Superior pouring the motel parking area in the rain, he requested that the Pruyns dismiss Gross which was done immediately. Gross was denied further access to either project, the complete supervision of which was then assumed by Higgins. In January, 1967, Southcoast defaulted on its prime contracts. On December 8, 1966, R-W Inns filed an acceptance of the work on its motel. Gross’ lien was filed February 10, 1967. Superior filed its lien February 14, 1967. A second acceptance of the motel work was filed by R-W Inns February 15, 1967.
Appellants’ brief urges primarily the factual question that the trial court erred in rejecting their defense that Gross’ work was incomplete and improperly performed. Incidentally, Appellants contend the lower court improperly awarded plaintiffs the amount of the entire contract price inasmuch as the work was not completed. In this regard, Appellants contend judgment should have been granted plaintiffs only for loss of profits of which plaintiffs were denied by the owners’ refusal to let plaintiffs complete the work.
GROSS’ CLAIM FOR FINISHING AND PAINTING SHEETROCK, TILE WORK AND CLEANING UP.
The record establishes that Gross had performed approximately 98% of the work of finishing and painting interior sheet-rock, exterior painting, ceramic tile work and cleaning up. Gross so testified, but conceding that of the tile work there remained only the installation of soap dishes and grab bars in the 46 units of the apartments and the 69 units of the motel. Higgins’ testimony on this score is that he had to expend $610,00 to complete the tile work and an additional $200.00 to regrout some of the tile Gross installed. Gross countered by stating that while he was on the job, no complaints were received regarding the tile work and no request made for regrouting of work performed.
Gross’ testimony was to the effect that the sheetrock and painting work called for was almost 100% complete when his services were terminated. In this respect, he was corroborated by his employee, Wilfred E. McCoy, Jr., who deposed that *386 this phase of the work was at least 90% complete when Gross was run off the job by Higgins.
Regarding the quality of the sheetrock finishing and painting, Gross conceded the work was not done according to normal practices. On this score, Gross was supported by McCoy and Cleveland W. McCorkel, a sheetrock contractor who performed the taping and floating of approximately 15 of the apartment units. In substance, these witnesses explained that upon orders from Boots Pruyn, the nails affixing the sheetrock to the studs were not set and puttied, but were merely painted over to cut costs and expedite completion of the projects. Both Gross and McCoy testified that Boots Pruyn directed that the ceiling and wall texture and finish, which are normally different, be done identically to reduce cost and accelerate construction. It is significant that although Boots Pruyn testified at the trial, he did not deny having given the aforesaid instructions regarding the finishing and painting of the sheetrock walls and ceilings. Nor was Southcoast’s Superintendent Jenkins called as a witness. Higgins testified as to the inferior workmanship on the ceilings and walls, and also indicated that the interior of the motel rooms had to be redone to meet the requirement of uniformity of texture and finish common to all Rodeway Motels. Higgins also testified the sum of $5,674.89 was expended to refinish the sheetrock and painting at the apartments and $1,360.00 was spent to redo the ceilings at Rodeway.
It is uncontroverted that the projects remained dormant from the time of Southcoast’s defalcation in early 1967, until August or September, 1967, when work was resumed under Higgins’ personal supervision. Gross testified unequivocally that before his ouster from the projects, he had cleaned the windows, tile work and sinks according to his agreement. Gross conceded he had not swept the floors, and neither had he vacuumed the carpets which had not then been laid. Gross also estimated the cost of installing soap receptacles and grab bars at between $.60 and $1.00 per apartment and motel unit. Contrarily, Higgins testified Gross performed no clean up work whatsoever, and after completion of the projects, a considerable sum was expended in cleaning operations which Gross should have performed. In holding for plaintiff Gross, the trial court obviously accepted the testimony of Gross and his witnesses rather than that offered by Appellants’ witnesses. In granting Gross full recovery, the trial court obviously rejected Appellants’ defenses that the work was incomplete, and that of the work actually done, a considerable portion thereof was defective and unacceptable. It is equally obvious that the lower court found, that for all practical purposes, Gross had completed his contract, and that the unperformed portion thereof was so inconsequential and minimal as to be of no real significance. All of the above findings are factual in nature. It is well settled law that the findings of the trier of fact will not be disturbed unless found to be manifestly erroneous. United States Fidelity and Guaranty Co. v. Hyams, La.App., 238 So.2d 750.
Determinations of the trier of fact predicated upon the credibility of witnesses will not be reversed except on a showing of an abuse of the much discretion vested in the trier of fact in such instances. Howard v. Pan American Fire & Casualty Co., La.App., 240 So.2d 755. Under the evidence of record herein, we cannot say that the trial court erred in any respect whatsoever in reaching the conclusions noted. Most certainly we cannot find that the trial court was either manifestly wrong in concluding as it did or that it abused its discretion in believing the testimony of plaintiff’s witnesses rather than those of Appellants.
Moreover, we are in agreement with the lower court’s findings that there was no disagreement between Gross and South-coast, the party with whom he contracted, concerning the quality of the work per *387 formed. We also find that Gross’ work was performed pursuant to his verbal contract with Southcoast implemented by instructions from the Pruyns who at no time made any objection thereto. In addition we find, as did the trial court, that the subsequent changes in the nature of the work ordered by Higgins after his assuming supervision, are of no importance in resolving this present dispute. In this regard, we note that the prime contract between the owners and Southcoast, though referred to in the pleadings and made part of the record by reference, was not actually introduced in evidence and does not form part of this transcript on appeal. There is no showing that Gross contracted to perform the work according to the specifications of the contract between PHP, R-W Inns and Southcoast. Having performed to the specifications of his employer, Gross fulfilled the terms of his contract and is entitled to his agreed compensation. If the work did not meet contract specifications imposed by the owners, such eventuality was a matter which concerned only the owners, the prime contractor and the surety on the contractor’s performance bond.
SUPERIOR CLAIM FOR LABOR FOR FINISHING THE CONCRETE SURFACE OF THE MOTEL PARKING LOT.
All parties concerned, including Gross and Robley P. Guidry, Jr., General Manager of Superior, agree that the paving done at Rodeway is defective and substandard. The trial court, however, found that the unacceptable result was occasioned by the work being done in the rain upon instructions from Boots Pruyn who was most anxious to complete the projects by the end of December, 1966, if possible.
The record establishes that the concrete parking area of the motel project was poured in December, 1966. Notwithstanding a rainy spell was in progress, the first day’s pouring was accomplished and the surface finished in an acceptable manner. All subsequent pourings, however, were either made during a rain or while the site was unusually muddy. It appears that after the first day’s pourings, the trucks could not drive onto the site because the ground was too muddy, soft and slushy. It also appears the ground was so soft the stakes holding the forms and screeds could not be kept at proper levels and alignment. On all days except the first, the redi-mix trucks were stationed on a shelled area near the adjacent highway and concrete literally pumped from the trucks, through large hoses, up to distances of 50 feet or more. The ground was so slushy, the finishing crews experienced extreme difficulty in handling the concrete. Considerable mud, ground water and rain water were mixed with the concrete thus weakening its strength and rendering it more susceptible to cracking and breaking. The concrete finishers also experienced considerable difficulty in keeping the reinforcing wire mesh at its proper position which is shown to be approximately halfway the four-inch thickness of the slab being poured. As a result of the prevailing conditions, it was impossible to maintain proper grades to insure uniform thickness of the slab. Subsequent testing revealed slab thicknesses varying from two to eleven inches.
All concerned agree the motel parking area turned out to be a complete disaster. Photographs in evidence show unmistakable evidence of excessive cracking and breakage. Moreover, in numerous places the reinforcing wire mesh protruded above the surface constituting a hazard to pedestrians and automobiles. Although attempts were made to correct the defects noted, it is virtually certain that all concrete, except that poured the first day, will have to be torn out and replaced at considerable expense.
Gross testified that he was fully aware weather conditions were extremely unfavorable for pouring concrete, but that he was instructed by the Pruyns to pour immediately, regardless of the weather, because it was imperative that the projects, especially the motel job, be completed as soon as *388 possible and opened for business. In this respect, Gross was corroborated by South-coast’s employee, Ellzey Fitzgerald, an employee of Southcoast, who worked on Southcoast’s job in New Orleans during December, 1966. In essence, Fitzgerald stated that he daily relayed messages from Boots Pruyn to Gross concerning the work in Houma, and that Pruyn’s instructions were that Gross was to pour concrete immediately despite the weather. It is to be noted that Pruyn conceded his relaying instructions to Gross to expedite the pouring of concrete and other work on the projects. Pruyn denied, however, that he ever gave instructions to pour concrete even if it rained because he was fully aware satisfactory results could not be achieved under adverse weather conditions. In addition, the trial court found that in December, 1966, Southcoast was in financial distress making it necessary that completion stages of the work progress rapidly so that South-coast could receive contract payments to meet its obligations. The record also sustains this finding. Based on these considerations, the lower court accepted the testimony of Gross and his witnesses on the crucial question of fault regarding the defective condition of the parking area. Finding no error in this factual decision, we concur therein. Flettrich v. State Farm Mutual Auto Ins. Co., La.App., 238 So.2d 220.
As a general rule, where contract work is substantially complete, the contractor is entitled to recover the full contract price, less the amount required to correct defects attributable to the contractor and the amount required to complete the project. Sullivan v. Carpenter, La.App., 193 So.2d 105, and authorities therein cited.
In the instant case, however, the defects are not attributable to plaintiffs and the record affirmatively shows that Gross offered to complete the relatively insignificant work remaining, but was refused further access to the job sites by Higgins. Under such circumstances, the trial court properly awarded Gross recovery of the full contract price. See Montague, Inc. v. Lytell, La.App., 196 So.2d 562.
The judgment of the trial court is affirmed at Appellants’ cost.
Affirmed.