292 So.2d 733 (1974)
Morton C. HURSTON et ux.
v.
Henry E. DUFOUR, III, et al. Frederick J. HEBERT, Individually, et al.
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY et al.
Nos. 9752, 9753.
Court of Appeal of Louisiana, First Circuit.
March 18, 1974.
Rehearing Denied April 22, 1974.
Writ Refused June 7, 1974.
*735 Thomas H. Benton and Richard J. Dodson, Baton Rouge, for appellants.
Robert L. Kleinpeter, Baton Rouge, for Aetna Ins. Co., and others.
David W. Robinson, Baton Rouge, for Govt. Emp. Ins. Co.
Kenneth E. Barnette, Baton Rouge, for Wilton Anders, and others.
Wm. H. Brown, Baton Rouge, for Fred. Hebert, and others.
Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
These appeals arise from separate tort actions generated by a head-on collision between an automobile owned by Frederick J. Hebert, and driven by his minor son, Paul F. Hebert, and a vehicle owned by Wilton J. Anders, and being driven by a minor, Henry E. Dufour, III, to whom it was loaned by Anders' son, Robert Danny Anders. As a result of the accident which occurred at approximately 11:30 P.M., January 5, 1968, Roger A. Hurston, guest passenger in the Hebert owned vehicle, was killed. His parents, Mr. and Mrs. Morton C. Hurston instituted action against Henry E. Dufour, III, Mrs. Cherry Dufour Weaver, wife of John Weaver, mother and legal custodian of Henry E. Dufour, III, and Aetna Insurance Company (Aetna) under the omnibus insurance clause of the Weaver's automobile liability policy issued by Aetna, and also under the provisions of a home owner's policy issued by Aetna to the Weavers. In addition, the Hurstons sued Robert Danny Anders, Wilton J. Anders and Government Employees Insurance Company (Government Employees), liability insurer of the Anders vehicle, seeking recovery from all defendants of expenses occasioned by the loss of their son and damages for loss of decedent's love and affection.
Frederick J. Hebert instituted action against the same defendants to recover damages to his vehicle, certain property losses, and damages for severe personal injuries sustained by his minor son, Paul F. Hebert. On attaining majority, Paul F. Hebert joined in his father's action to recover individually for his personal injuries.
The accident occurred on Perkins Road approximately one mile south of the City of Baton Rouge. At the scene, Perkins Road is a two-lane, asphalt covered highway which runs from north to south. Its improved surface is 20 feet, 6 inches wide. On either side are grassy shoulders from six to seven feet in width separating the roadway from ditches which run parallel thereto. Paul F. Hebert, accompanied by Roger Hurston seated in the right front seat, was proceeding northerly (toward Baton Rouge). The Anders vehicle, driven by young Dufour, was proceeding southerly (away from Baton Rouge). An almost head-on collision occurred between the vehicles in the approximate center of the road. The Dufour youth had no recollection of the events immediately preceding the collision. In substance, Paul F. Hebert testified he was driving in his proper lane at about 45 to 50 miles per hour (the limit being 60), when suddenly he was confronted with the lights of an oncoming vehicle bearing directly down upon him in his (Hebert's) lane of travel. He swerved to his left to avoid a collision and could recall nothing further regarding the occurrence of the accident. Based primarily on the hereinafter discussed testimony of an accident *736 reconstruction expert, the trial court concluded the accident resulted solely from the negligence of young Dufour in invading Hebert's lane of travel. The lower court found that the impact occurred virtually in the center of the road at which instant the Dufour driven car was straddling the center line, about 40 to 50% thereof being in Hebert's lane. The trial court also found that on seeing the Dufour car in his path, Hebert swerved to avoid a collision. The court concluded the accident resulted solely from Dufour's fault, and that Hebert was free of negligence in reacting to a sudden emergency not of his own creation.
Finding Dufour was not covered under Government Employees' policy issued to Anders on the ground that Dufour lacked permission to drive the vehicle either express or implied, the trial court rejected all demands against that insurer. Likewise the trial court rejected all claims of coverage under Aetna's homeowners policy issued to the Weavers because of an exclusion of claims arising from an automobile accident. Coverage was decreed under Aetna's automobile liability policy in favor of John Weaver, stepfather of Henry E. Dufour, III, because said policy provided omnibus coverage of a driver operating an insured vehicle if its use was "reasonably believed to be with the permission of the owner."
On the above findings, the trial court rendered judgment in favor of Frederick J. Hebert and Paul F. Hebert against Dufour, Mrs. Weaver and Aetna, to the extent of Aetna's coverage, under Aetna's automobile liability policy on the Weaver cars, in a substantial sum not at issue on appeal. Judgment was also rendered in favor of Morton C. Hurston, as head and master of the community between him and Mrs. Hurston, against the same named defendants in a sum undisputed herein. Additionally, Mr. and Mrs. Hurston were each awarded $20,000.00 for the loss of their son.
Aetna appeals from the judgment decreeing its coverage of Dufour under the omnibus provision of Aetna's policy on the Weaver vehicles.
Defendants Cherry Dufour Weaver, Henry Dufour III, and Aetna appeal from judgment exonerating Paul F. Hebert of negligence proximately causing the accident and holding Dufour to be solely at fault. These parties assert the trial court erred in finding Dufour solely at fault, and urge that Hebert alone was negligent in swerving into the path of the Dufour driven vehicle while said automobile was in its proper lane of travel. Alternatively, these parties maintain young Hebert was negligent in not maintaining a proper lookout in view of alleged prevailing adverse weather conditions, and in swerving to the left into the path of Dufour's car when Hebert could have veered to the right and avoided the collision. In this latter regard, it is argued that Hebert created the emergency, and is therefore not entitled to invoke the sudden emergency doctrine.
All plaintiffs have appealed contending the lower court erred in rejecting coverage of Dufour under Government Employees' policy on the Anders automobile, and also in rejecting coverage of Mrs. Weaver under Aetna's Homeowners policy issued to Mr. and Mrs. Weaver. We affirm all judgments.
On the evening of January 5, 1968, Danny Anders, 20 years of age, was home on leave after having completed Marine Corps boot camp training. This being the last night of his leave, young Anders obtained permission from his father to use the family car for an evening out with friends. After being cautioned about the perils of winter driving, young Anders picked up Henry Dufour, III, Paul Courrege and Jimmy MacMurdo, following which the group went to a local bar. Dufour and MacMurdo did not enter the bar. Instead they borrowed the Anders car and went to another tavern for a while, and returned to the establishment where they left Anders *737 and the others. Later, Dufour again borrowed the Anders vehicle to drive a friend home to change clothes and return to the same tavern. Still later, Dufour borrowed the Anders car for the third time during which use subject accident occurred. It is conceded that Danny Anders gave Dufour permission to use the Anders vehicle for the three trips made that night as well as on numerous occasions estimated at between ten and fifteen times.
When the accident occurred, Paul Hebert was driving his father's vehicle with permission to use the car for double dating with young Hurston. Earlier the two lads had attended a basketball game with their respective dates. After the game, the two couples went to a drive-in restaurant for food, following which the girls were driven home. At the time of the accident, the young men were en route to the Hebert home where the Hurston youth was to spend the night so that the two youths could go hunting early the next morning.
The accident was investigated by Gerald Bean, State Trooper, who found the Hebert car facing in an easterly direction with its rear end in the ditch on the east side of the road. Bean noted that the Anders vehicle came to rest on the roadway facing in a northeasterly direction.
On January 8, 1971, an attempt was made to take young Anders' testimony by deposition. It suffices to note that because of severe wounds suffered in Viet Nam, Anders lacked sufficient mental capacity to testify.
Paul F. Hebert testified that he was proceeding at a speed of 45-50 miles per hour when he suddenly observed an oncoming vehicle coming straight toward him. In effect, he stated the oncoming car was headed straight toward him in his lane of travel. To avoid a collision, he veered to his left. He explained that he did not attempt to veer right because there was a deep ditch on that side of the road. Hebert recalled nothing else concerning the accident.
Early in the morning after the accident, the scene was visited by Ray Herd, Supervisor, Northwest Louisiana Criminalistic Laboratory, an expert with 18 years experience in the field of accident reconstruction. Herd's investigation was in his capacity as employee of the state, and was prompted by the fact that the accident produced a fatality. Mr. Herd was accompanied by Trooper Bean, who explained the position of the automobiles after the accident, and pointed out certain physical evidence such as gouge marks and tire marks on the surface of the roadway at the scene. Based upon the physical facts, information given by Bean and Herd's personal inspection of the vehicles involved, Herd gave an expert opinion as to the position of the vehicles at the instant of impact. He noted that the damage to the Anders car was mostly to the front of the car or "from the front towards the back, just across the front, but the impact is from front toward the back." Herd found the damage to the Hebert car to be from the right front toward the left rear, the right front being forced into the front seat on the right side. He concluded the point of impact occurred in the approximate center of the highway, possibly a little inside Dufour's lane of travel. He also determined that at the moment of impact, the Anders car was straddling the center line of the highway (about 50% of the vehicle being in each lane), and the Hebert car was over the center line at an angle. Herd concluded the positions of the vehicle upon contact verified Hebert's testimony that Hebert swerved to the left just before impact.
The trial court found Dufour's negligence in invading Hebert's lane of travel to be the sole proximate cause of the accident. This conclusion appears well supported by the testimony of Hebert, Trooper Bean and Mr. Herd. It is well established that the findings of a trial court on a matter of fact will not be disturbed on appeal unless shown to be manifestly erroneous. Gross v. Southcoast *738 Contractors, Inc., La.App., 261 So.2d 383. We find no error in this regard.
The trial court also exonerated Hebert from negligence in swerving to the left on the basis of a sudden emergency created by Dufour's action. Although the court noted that Hebert might perhaps have avoided a collision by swerving to the right, it also found that Hebert's reaction to the danger was that of a driver who, faced with an emergency not of his own creation, is not charged with the duty of opting a course that will avoid an accident, but is only required to act reasonably. Ashford v. Richards, La.App., 228 So.2d 530. We find no error in this conclusion.
We find the trial court properly rejected the contention that Dufour was covered under the omnibus insurer provision of Government Employees' policy on the Anders car. Our jurisprudence holds that coverage is extended under such a policy clause where a second permittee operates a vehicle with the permission of the named insured, either express or implied. Touchet v. Firemen's Insurance Company of Newark, New Jersey, La.App., 159 So. 2d 753; Buckelew v. Roy, La.App., 168 So.2d 831. It is also well settled that the question of implied permission is a matter of fact to be determined in the light of the circumstances of each case. American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253.
The omnibus insurance clause in Government Employees' policy on the Anders vehicle reads as follows:
"Persons Insured. The following are insureds under Part I:
(a) with respect to the owned automobile,
(1) the named insured and any resident of the same household,
(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his actual use thereof is within the scope of such permission, and . . ." (Emphasis by the Court.)
Relying on Touchet v. Firemen's Insurance Co. of Newark, New Jersey, La.App., 159 So.2d 753, plaintiffs contend Dufour had implied permission to drive the Anders automobile. It is argued that Danny Anders, a mature individual home on leave after finishing Marine Corps boot training, was given the general use of the vehicle on the night in question, and was not prohibited from granting permission to third parties to use the car in question. It is suggested that young Anders had complete and unlimited control of the vehicle with no instructions not to lend it to anyone else. Therefore, Anders had general discretion and control over the vehicle to the extent that a third person using the car with his permission is held to have the indirect or implied permission of the named insured, as held in Touchet, above.
The record, however, discloses otherwise. Both Mr. and Mrs. Anders testified that from the time their son obtained his driver's license, he was told never to lend the family car to anyone else and never to drive anyone else's automobile. It is conceded that on the night in question, young Anders was not specifically prohibited from lending the car. It appears, however, that it was a long standing rule in the Anders household that the family automobile was to be driven only by members of the family, a rule which Danny understood and presumably obeyed. So far as Mr. and Mrs. Anders knew, Danny never loaned the car to anyone else. Mrs. Anders testified that on one occasion when she observed her son driving someone else's car, she reprimanded him severely and reminded him he was never to drive anyone else's car or permit anyone to drive the Anders family car.
We find the facts in this case clearly distinguishable from those in Touchet, above. In the cited case, general control and discretion of use was given of an automobile for an evening. In Touchet, *739 however, no instruction was ever given prohibiting the lending of the vehicle to a third party. In this instance, young Anders had been specifically instructed never to lend the vehicle to anyone else. His lending of the vehicle constituted a clear violation of this long standing household rule.
We find no error in the trial court's rejection of coverage of Mrs. Weaver under Aetna's Homeowners Policy issued Mr. and Mrs. Weaver. In pertinent part, the policy provides as follows:
"PROVISIONS APPLICABLE TO SECTION II
This Company Agrees With The Named Insured:
INSURING AGREEMENTS
1. Coverage EPersonal Liability:
(a) Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage . . . .
SPECIAL EXCLUSIONS
Section II of this Policy Does Not Apply:
. . . (b) under coverages E and F, to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles. . . while away from the premises or the ways immediately adjoining . . ."
Plaintiffs-appellants urge that the policy protects Mrs. Weaver from liability for damages for personal injury and property loss. They also contend the exclusion of liability from the operation or use of an automobile, relied upon by Aetna, is inapplicable because Mrs. Weaver's liability does not arise from her operation or use of a vehicle, but from her vicarious liability for the torts of her minor son pursuant to LSA-C.C. art. 2318.
Plaintiffs-appellants invoke the rule that exclusionary clauses in insurance policies are strictly construed against the insurer and that, among a choice of permissible constructions, courts will adopt that interpretation which effectuates rather than defeats coverage. Snell v. Stein, 261 La. 358, 259 So.2d 876; Thomas v. First National Life Insurance Company, La.App., 250 So.2d 42. It is argued that because Mrs. Weaver's liability is vicarious, it does not arise from her operation of an automobile, therefore, her liability does not arise from an act covered by the exclusionary clause and the exclusionary provision is inapplicable.
We find the construction urged by plaintiffs-appellants to be unreasonable considering the basic nature of the homeowners policy which appears in evidence. To hold as these parties suggest would extend coverage far beyond what appears the reasonable intention of insured and insurer. It appears the exclusionary clause in question was designed to exclude liability arising in any manner from the operation or use of an automobile away from the premises of the insured. To hold otherwise is to create an automobile insurance contract out of a homeowners policy designed primarily to cover liability resulting from incidents occurring on the premises of the insured. Although Mrs. Weaver's liability does not result from her personal operation of an automobile, it stems directly from her son's alleged liability based on the negligent operation of a vehicle.
Plaintiff-appellants rely on Shelby Mutual Insurance Company v. United States Fire, 12 Mich.App. 145, 162 N.W.2d 676, and State Farm Mutual Automobile Insurance Company v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123, as authority for the proposition that coverage should be found under Aetna's homeowners policy. The facts of Shelby Mutual Insurance, above, are not set forth in the briefs filed herein.
*740 In Partridge, above, the insured carried an automobile liability policy and a homeowners policy with his insurer, State Farm. A guest passenger in Partridge's hunting vehicle was injured when Partridge's hand gun, being carried therein, discharged accidentally. The weapon fired when Partridge drove his vehicle off a road in pursuit of game. The insurer brought an action to determine whether the automobile liability policy or homeowners policy covered the incident. In essence, the court found Partridge liable for the negligent handling of a firearm, which risk was within the coverage of the homeowners policy which generally protected the policy holder from non-auto related accidents. The court concluded that if liability arises from two sources, namely, a non-auto related incident as well as an auto-related occurrence, the mere fact that one source is excluded under the homeowners policy does not render the homeowner's coverage ineffective if the other source of liability is included thereunder. So finding, the court held coverage was afforded the insured both under the automobile liability policy and the homeowners policy.
Our jurisprudence is established to the effect that decisions of other jurisdictions are persuasive and will be considered in disposing of issues res nova in our own courts, but are not controlling. Roux v. New Orleans Police Department, La.App., 223 So.2d 905. We readily acknowledge the soundness of Partridge, above, under the factual situation presented therein. We find, however, said authority is inapposite because of its factual distinction from the case at hand on a most salient point. In this instance, the sole generating source of liability is an auto-related accident against which Aetna's homeowners policy provided no coverage. But for an automobile accident in which she was not personally involved, Mrs. Weaver could not be held liable herein. The fact that her liability is vicarious and arises by mere operation of law is a matter of no consequence under the facts of this case. Such liability, arising out of an automobile accident as it does, is excluded from coverage under Aetna's homeowners policy.
We now consider Aetna's contention that the trial court erred in finding that its Family Combination Automobile Policy issued on the Weaver family vehicles provided omnibus coverage of Dufour. The pertinent policy provision reads as follows:
"Persons Insured. The following are insureds under Part I:
. . . (b) with respect to a nonowned automobile,
(1) the named insured,
(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission . . ." (Emphasis by the Court).
As aptly observed by the trial court, this omnibus clause is broader than the hereinabove quoted omnibus clause in Anders' policy. Coverage is extended in this instance where use is either with actual permission of the owner or the user reasonably believes his use is with the permission of the owner, and the use is within the scope of such permission.
The record indicates that Dufour was a frequent user of the Anders vehicle with Danny Anders' permission, having borrowed the vehicle on numerous occasions which he estimated to be at least 10 and perhaps 20 occasions. On the night of the accident, he used the vehicle on three separate occasions. The record is barren of proof that Dufour knew that Danny Anders had no permission to lend the vehicle. Under the circumstances, we concur in the trial court's finding that Dufour had reasonable ground to believe that Danny Anders had permission to lend the vehicle, and that his use thereof was with the owner's consent.
*741 We also find that the use made of the vehicle was within the scope of the permission granted by Danny Anders. In each instance, on the night of the accident, Dufour used the vehicle for the purpose for which it was borrowed from his associate. The actual use of the vehicle at the instant of impact was clearly within the scope of the purpose for which the Anders lad loaned it to Dufour. We concur in the trial court's finding that coverage was afforded Dufour under the omnibus clause of Aetna's policy on the Weaver vehicles.
Appellants, Frederick J. and Paul F. Hebert, contend the coverage under Aetna's Family Combination Automobile Policy on the Weaver vehicle is "excess coverage", and since the policy covers two vehicles with a separate premium charged for each one, Aetna's coverage of $5,000.00-$10,000.00 on each vehicle should be doubled and the coverage stacked. This position is based on the following policy provision:
"OTHER INSURANCE
If the insured has other insurance against a loss covered by Part 1 of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total and applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."
We find these contentions without merit. We first note that, as hereinabove set forth, Dufour was not otherwise covered by insurance, consequently Aetna's coverage is primary, not excessive coverage. Peterson v. Armstrong, La.App., 176 So.2d 453, relied upon by appellants in this regard, is inapposite. In Peterson, two insurers were found to have provided coverage on a single vehicle, here Aetna alone affords coverage.
Appellants cite no authority for their contention that coverage under Aetna's automobile liability policy should be doubled because two vehicles were insured with a separate premium being charged for each. The policy covers two expressly described vehicles in the limits above indicated. It appears separate premiums, in different amounts, are charged for each vehicle, presumably based on the size and character of each automobile. After considering the policy terms, we find it devoid of language indicative of intent to provide double coverage on each vehicle.
On appeal, Mr. and Mrs. Hurston seek increases in their awards of $20,000.00 each for the death of their son, Roger. They primarily contend the present tendency is to award parents larger sums for the loss of a child. The record amply supports appellants' contention that Roger Hurston was a most remarkable and gifted person who was extremely close to his parents. However, awards for damages must be predicated upon the ability to pay of the defendants cast. The sole insurance coverage in this case is that of Aetna in limits of $5,000.00-$10,000.00. The total awards herein exceed the insurance coverage many times. The remainder of the judgments must be paid by Mrs. Weaver and her son, Henry E. Dufour, III. The record amply establishes that the awards herein are more than adequate considering the ability of Mrs. Weaver and Henry E. Dufour, III, to pay.
The judgment in Number 9752, Morton C. Hurston, et ux. v. Henry E. Dufour, III, is affirmed; all costs of said proceedings to be paid by defendants, Cherry Dufour Weaver, Henry E. Dufour, III, and Aetna Insurance Company.
Affirmed.