453 So.2d 592 (1984)
Drew PIZZO
v.
Margaret GRAVES, Malcolm Thibodeaux, and State Farm Automobile Insurance Company and Trinity Universal Insurance Company.
No. 83-CA-606.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1984.
Rehearing Denied August 17, 1984.
*593 Christopher E. Lawler, and James L. Donovan, Jr., Metairie, for Florists' Mut. Ins. Co. defendant-appellant.
Gerald J. Leydecker, New Orleans, for Drew Pizzo plaintiff-appellee.
Before BOUTALL, CHEHARDY and GAUDIN, JJ.
BOUTALL, Judge.
This case arises from an automobile collision in which the plaintiff, Drew Pizzo, was injured and subsequently lost the sight of his left eye. From a judgment in favor of the plaintiff one of the insurer defendants has appealed.
The accident occurred on February 2, 1980 in Metairie at an intersection governed by four-way stop signs. Pizzo was proceeding west on Seventeenth Street and had pulled out into Severn after stopping at the stop sign. In the middle of the intersection his vehicle was struck on the driver's *594 side by a pickup truck driven by a seventeen year old boy, Malcolm Thibodeaux ("Malcolm"), who had failed to stop at the intersection. The car was owned by Margaret Graves, a friend of Malcolm's step father, at whose home he was then living. Malcolm's parents had been divorced for some time and the custodial parent was his mother, Delores Hill, who was separated from her second husband, John Hill, at the time of the accident. Although the exact date does not appear in the record, the Hills were divorced shortly thereafter and John Hill married Mrs. Graves in April, 1980.
Malcolm had been living with his mother in a home in Violet owned by her and John Hill, but left on November 26, 1979 after an argument with his mother. He then moved to Mrs. Graves's home in Metairie and transferred to Bonnabel High School. He worked part time and paid Mrs. Graves $50.00 weekly for his room and expenses. Shortly before moving Malcolm had signed up for a Delayed Enlistment Program with the Marine Corps, which he was to enter after high school graduation in 1980.
Pizzo filed suit against Malcolm Thibodeaux, Margaret Graves, State Farm Automobile Insurance Company ("State Farm") as her insurer, and Trinity Universal Insurance Company as his own insurer. In three supplemental and amended petitions Pizzo added other persons and insurers as defendants, several of which were subsequently dismissed. Pizzo's own automobile insurer, Trinity Universal Insurance Company, paid $5,000, the limits of uninsured or underinsured coverage. When trial was held on September 17, 1982, the defendants before the court were Malcolm Thibodeaux, State Farm, Delores Hill, and Florists' Mutual Insurance Company ("Florists") as liability insurer of John Hill and Delores Hill under their homeowners policy. The court rendered judgment against Florists' in the amount of $125,000. On March 28, 1983, upon hearing a motion for new trial and for amendment of judgment the judge signed an amended judgment. That judgment provides that Malcolm Thibodeaux and Delores Hill are liable in solido for $125,000, of which State Farm Mutual Automobile Insurance Company and Florists' Mutual Insurance Company are liable for their policy limits of $25,000 and $100,000 respectively. State Farm paid its judgment. This appeal by Florists' followed.
Although the appellant raises five separate issues, the issues before us may be summarized as follows: whether Delores Hill was vicariously liable for the acts of Malcolm Thibodeaux when he was not living in her home; whether the exclusionary clause of the homeowner's policy is applicable to the facts and the plaintiff's recovery should be denied; and whether the plaintiff was guilty of contributory negligence.
Vicarious Liability of Delores Hill
LSA-C.C. art. 2318 sets out the liability of parents for the torts of minor children as follows, in pertinent part:
"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
"The same responsibility attaches to the tutors of minors."
The appellant questions the correctness of the trial judge's interpretation of the article in finding Delores Hill vicariously liable for Malcolm's accident.
Florists' position is that Mrs. Hill is not liable because Malcolm was no longer living with her, and that the redactors of the Civil Code did not intend for liability to be found under such circumstances.
It is clear from the testimony of Malcolm, of John Hill, and of Mrs. Hill that Malcolm had been living at a residence other than his mother's since November 26, 1979. After leaving home he did not return even to stay over night and saw his mother only once between his departure and the day of the accident. On December 4, 1979 Mrs. Hill executed an affidavit, introduced into evidence, attesting to her wish to permit Malcolm to live with Mr. Hill at 4921 Pike Drive, Metairie (Mrs. *595 Graves's residence), and transfer to public school in Jefferson Parish.
In the case of Turner v. Bucher, 308 So.2d 270 (La.1975) the Supreme Court overruled previous holdings and held that the liability imposed by article 2318 is strict liability. The liability lies with the father, if he is alive, unless the parental authority of the father has been suspended by law, as in the award of custody to the mother. Flannigan v. Valliant, 400 So.2d 225 (La. App. 4th Cir.1981) writ denied 406 So.2d 611 (La.1981); Frazer v. Day, 307 So.2d 733 (La.1975); Guidry v. State Farm Mutual Automobile Ins. Co., 201 So.2d 534 (La.App. 3rd Cir.1967). Parental authority and liability is not terminated merely by the minor's physical absence from the custodial parent's dwelling. Flannigan v. Valliant, supra; Deshotel v. Casualty Reciprocal Exch., 350 So.2d 283 (La.App. 3rd Cir.1977) at 287, and citations therein.
The appellant relies on Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968), where the court did say that vicarious liability would attach, "provided, of course, the minor is residing with the parent at the time" (Williams, supra, 214 So.2d at 143). The facts of that case are distinguishable from the one at hand in that the issue was whether the authority of the minor's employer superseded parental authority and liability; the youth was working full time but living at home.
The appellant cites the recent case of Miranne v. New, 381 So.2d 584 (La.App. 4th Cir.1980). In Miranne the court exonerated a father from liability for a tort committed by the minor son. Although residing with his father, the boy had been hired by a caterer as a live-in cook, bartender, and dishwasher for a four-day fishing trip at a camp away from his home. The court held that article 2318 was not applicable to the facts of the case and said, at 585:
"... While this boy was residing with his father in general he was taken to the fishing camp by this group of sportsmen as a live-in servant for four days during which he was beyond the authority of his father. Plaintiff and his host and companions were the masters and Donald New was their servant. When the accident occurred Donald was on a mission for plaintiff and was driving plaintiff's automobile with his specific authorization. We do not believe that the redactors of the Civil Code intended (nor does the legislature intend) for Art. 2318 to impose liability on Donald's father under these circumstances."
The Supreme Court has not as yet considered the liability of a parent for the tortious acts of a minor who has voluntarily moved from the parental home and is self-supporting. The Miranne holding is entirely contradictory to that of Flannigan, supra. The minor in Miranne was absent from home only four days. In Flannigan, a boy was in the legal custody of his mother but had left home to live elsewhere for over a year. The appellate court found the custodial parent liable, and said at 227:
"... Since she had legal custody of the minor son at the time of the alleged battery she had parental liability for the son's tortious acts. The fact that Wayne resided outside of the mother's abode does not relieve her of that liability ...."
The Flannigan court further stated, at 228:
"Our jurisprudence makes it clear that the residence referred to [in article 2318] is legal residence. Toca v. Rojas, 152 La. 317, 93 So. 108 (1922) relied upon in Williams v. City of Baton Rouge, supra."
In Toca v. Rojas, cited above, the court declined to rule on whether parental authority and responsibility ends when a minor child voluntarily leaves the parental home.
In the case before us, the trial judge chose to follow Dofflemyer v. Gilley, 395 So.2d 403 (La.App. 3rd Cir.1981) because the facts were similar to those of our case. In Dofflemyer, the minor son lived with his parents until April 29, 1976, when he moved from his parents' home and then became involved in an accident on June 26, *596 1976. Although the parents did not know the boy's address, they were in fairly continuous contact with him and he returned for a meal or to wash clothes from time to time. The court found the father clearly liable under LSA-C.C. art. 2318.
As an additional defense against vicarious liability of the mother, the appellant argues that the Marine Corps had authority over Malcolm, as he had taken an oath on November 13, 1979. We find no merit to this argument. It was clear from the recruiting sergeant's testimony that the Corps had no control over Malcolm prior to his reporting to boot camp. The sergeant met with Malcolm from time to time to counsel him on Marine Corps life but such counseling was not required.
Accordingly, we affirm the trial court's finding that Delores Hill is vicariously liable for the torts of her minor son.
Liability of Florists' Insurance Company
At the time of the accident, the home jointly owned by John Hill and Delores Hill was insured by Florists', under a homeowners policy that included coverage for personal liability for bodily injury and property damage up to $100,000.
The policy was issued to "Delores Landlos [Lanclos] Hill w/o & John Perry Hill." In the definitions section, "Insured" is said to mean:
"(1) the named Insured stated in the Declarations of this policy;
"(2) if residents of the Named Insured's household, his spouse, the relatives of either and any other person under the age of twenty-one in the care of any Insured ..."
Section II provides coverage as follows:
"COVERAGE EPERSONAL LIABILITY
This Company agrees to pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as damages because of bodily damage, to which this insurance applies, caused by an occurrence .... [Emphasis supplied]"
In pertinent part, the exclusionary clause related to personal liability for bodily injury and property damage reads as follows:
"This policy does not apply:
1. Under Coverage EPersonal Liability....
a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
(1) any aircraft; or
(2) any motor vehicle owned or operated by, or rented or loaned to any Insured; but this subdivision (2) does not apply to bodily injury or property damage occurring on the residence premises if the motor vehicle is not subject to motor vehicle registration because it is used exclusively on the residence premises or kept in dead storage on the residence premises; or
(3) any recreational motor vehicle owned by any Insured, if the bodily injury or property damage occurs away from the residence premises; but this subdivision (3) does not apply to golf carts while used for golfing purposes."
We agree that the trial judge was correct in following Dofflemyer v. Gilley, supra, and in finding that the homeowners policy afforded coverage to Mrs. Hill for her vicarious liability for the torts of her son. Malcolm clearly was not a "resident of the Named Insured's [Mrs. Hill's] household" and the exclusionary clause does not apply to him as "any insured." He had been authorized by his mother to live under the care of Mr. Hill. In Dofflemyer the Geico policy's personal liability provision, exclusionary provision, and the definition of "Insured," as quoted in the decision, are identical to those clauses in the Florists' policy in the case at hand. The minor driver was no longer a member of his parents' household, but the named insured, the father, was held vicariously liable for his minor son's torts under LSA-C.C. 2318.
The appellant cites the case of Hurston v. Dufour, 292 So.2d 733 (La.App. 1st Cir. 1974), writ denied, 295 So.2d 178 (La.1974), *597 for the principle that a homeowners policy is not intended as a substitute for an automobile insurance policy. The exclusionary clause in the Hurston policy clearly denied coverage of liability for harm arising from any use of an automobile off the insured's premises. The wording of that exclusionary clause is quite different from the wording in the Florists' policy, where "any aircraft" is purely and simply excluded but "motor vehicle" is modified by specification as to the persons using the vehicle.
The appellant argues that, even if Malcolm was not an insured vis-a-vis Mrs. Hill, he was an insured as to Mr. Hill, the other named insured, because Mr. Hill and Mrs. Graves lived together. True, the trial judge found that Malcolm was living with Mr. Hill and Mrs. Graves, and the testimony, although conflicting, suggests this finding is correct. However, we point out that the policy contains the following severability clause, relating to conditions applicable to personal liability coverage:
"SEVERABILITY OF INSURANCE: The insurance afforded under Section II applies separately to each Insured against whom claim is made or suit is brought except with respect to this Company's limit of liability."
Assuming, but not deciding, that Malcolm was an insured as to Mr. Hill, we find that the coverage of Mrs. Hill's liability was not excluded, although if the claim had been filed against Mr. Hill, the exclusionary clause would then have applied. Contributory Negligence of Drew Pizzo
The trial court found and we agree that the accident resulted solely from the negligence of Malcolm Thibodeux, and Drew Pizzo was free from fault.
The appellant urges that Pizzo breached his duty to keep a proper lookout and should have realized that the other vehicle was not going to stop. The accident occurred at night at an intersection controlled by four-way stop signs. Pizzo had stopped, then proceeded across, while Malcolm failed to stop at the stop sign. Although the case of Simmons v. Baumgartner, 393 So.2d 904 (La.App. 4th Cir.1981) concerned an accident at an uncontrolled intersection, we agree with the principle of due care enunciated at 906, as follows:
"One who is in charge of operating an automobile has a duty to look and observe, which never ceases; that which they can see, they must see and in legal contemplation they do see. Failure to see what they could have seen by the exercise of due diligence does not absolve from liability ....
"Even when the motorist has the right of way, she is not relieved of the necessity of looking into the direction from which others may be expected to come, and where such care would have prevented the accident, she who fails to look or to keep a proper lookout cannot recover, even though the other party was grossly at fault ...." [Citations omitted.]
The testimony in the case at hand is not persuasive that Pizzo saw or should have seen the oncoming vehicle soon enough to avoid the crash. As the testimony of Malcolm by deposition and of Pizzo live provides an adequate basis for the trial judge's finding of no fault on the part of Pizzo, we affirm. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
Accordingly, for the foregoing reasons, the judgment appealed from is affirmed.
AFFIRMED.