## Blevins et al. v. Adams.

Jan. 31, 1941.

Clay & Clay for appellants.

Henry Jackson and Nelson D. Rodes for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

Charging that a deed which she had executed to the appellants on March 3, 1937, for an allegedly grossly inadequate consideration had been obtained by fraud, misrepresentation, mistake, overpersuasion, undue influence, flattery, and deceit, and that appellants had violated their undertakings which constituted the consideration, the appellee, on December 2, 1937, instituted this action seeking a cancellation of the instrument and a restoration of her property. At the time of the transaction appellee was a childless widow seventy-six years of age; the property conveyed consisted of a 74-acre farm, on which she resided, two houses in Danville of

small value, her household furniture, farming implements, and livestock; and the consideration for the conveyance was the undertaking of appellants to furnish appellee a home, to care for her during the balance of her life and give her a Christian burial, to assume the payment of a mortgage for $500 on the Danville houses, and to pay to her $300 per annum during appellee's lifetime, not, however, to exceed a period of sixteen years. Appellee was to receive the rentals from the Danville houses during her lifetime, out of which she was to pay the taxes and insurance premiums on the Danville property. On an issue out of chancery awarded on motion of the appellee, the chancellor instructed the jury to find for the appellee if they believed from the evidence that after the appellants had taken up their abode with the appellee in the residence on the farm, "defendants treated plaintiff unkindly, and so unkindly that by reason thereof it was reasonably unbearable on the part of Mrs. Adams to continue to live in the home with the defendants"; but that if they believed that during the time they resided together, the appellants furnished appellee "with such a home as would have been a satisfactory home to a reasonable person under the same or similar circumstances as appear in this case" they would find for the appellants. The jury returned a verdict reading—"We, the following jurors, find for the plaintiff, Mrs. Adams."

Thereupon, the court entered a decree cancelling the deed and attempting to adjust the equities of the parties.

Many questions are raised as to the propriety of the court's instructions and his refusal to set aside the swearing of the jury and re-assign the case for trial after the appellants had discovered before submission that one of the jurymen, L. O. Harber, was the father of the husband of Marie Jones, a greatniece of the appellee, with whose parents, Mr. and Mrs. Logan Jones, appellee was residing at the time of the trial. But since the verdict of the jury was advisory and we have reached the conclusion that the evidence was wholly insufficient to sustain any of the grounds on which the cancellation of the deed was sought, we shall not discuss the procedural questions or decide whether the verdict should have been set aside because of the presence on the panel of the objectionable juror. Except for her un-

supported assertion that the appellants, rather than she herself, had sought the arrangement which resulted in the execution of the deed and their taking up their abode in her residence, and her further completely disproved statement that she was unaware that the deed included her household furniture, appellee's testimony consisted of accusations that after appellants had moved into her house, they, on several occasions, had cursed her, had left her alone at night, had quarrelled among themselves to her annoyance, had caused her to drink poisoned cider, had failed to furnish her proper food, had cut a door in the house, and had damaged a stove by failing to burn it properly, and perhaps other incidents of a trivial nature. The only serious charge was that the appellants had cursed her, and this charge was not only uncorroborated, but was so convincingly denied by appellants as to make manifest its great exaggeration, if not complete falsity. The door which was cut was necessary in order to provide a means by which appellants might enter their sleeping quarters without going outside the house or passing through appellee's bedroom. That it added to the convenience of everyone and improved the property, rather than injured it, is proven beyond controversy. Appellee admits that she never complained of the food, and the evidence discloses that she participated in and apparently enjoyed every meal. The incident of the poisoned cider was wholly trivial, and all the facts showed that if appellee was in fact made ill by the cider, it was because of its having been allowed to stand over night in a metal container. The other grounds of complaint either disappeared entirely or were shown to be without a substantial basis by appellee's admissions under cross-examination. The neighbors testified that appellants' treatment of appellee, whenever they were present, appeared to be all that anyone could expect or desire. Appellants made the payments required of them, and there is no evidence that the consideration was inadequate. The lawyer who drew the deed was a capable practitioner holding an official position, and appellee admits that after the deed was drawn appellants suggested that she take it to another lawyer in order to satisfy herself that it carried out her wishes. Something like two weeks elapsed before it was finally executed, during which period the property was being surveyed, and, although nothing unpleasant had occurred during the interim, appellee,

according to her testimony, had begun to regret having parted with her property.

It is impossible to read this record without coming to the conclusion that appellee, though cognizant of the advantages, in fact, the necessity, of having someone live with her, manage her property, and take care of her, nevertheless, immediately became dissatisfied with any arrangement which she made looking toward that end. Indeed, there was offered in evidence a letter written by appellee to Mrs. Viola Nofsinger, under date of November 15, 1936, in which she complained of the mistreatment of her by a member of the Jones family who was at that time apparently managing her property, and accused him of many offenses great and small, the significance of which letter is apparent when it is disclosed that at the time appellee opened negotiations with the appellants, she was making similar charges against the Nofsingers, who, pursuant to the letter referred to had taken up their abode in her house under some arrangement by which, if the Nofsingers took care of her properly they were to receive her property upon her death. She paid the Nofsingers $100 to get rid of them, and put them out of her property in order that appellants might come and reside with her. When she had become dissatisfied with them, she left the home without warning a few days before instituting this suit, and refused to return, notwithstanding the fact that appellants made several efforts to induce her to do so. On leaving appellants she took up her abode with the Jones family, the inconsistency of which conduct is illustrated by the statement which she had previously made to the lawyer who drew the deed to appellants. We quote from his testimony:

> "Well, I remember she said the Joneses, and if I am not mistaken, she named one other party, who were her heirs and would take her property if she died, had not treated her right and they were not on speaking terms, and she didn't want them to have it, * * *"

It would serve no good purpose to carry the narration further. It is sufficient to say that whether we treat the decision in this case as a verdict of a properly instructed jury or a decision of a chancellor in a purely equitable action, it is flagrantly against the weight of the evidence, which, in our opinion, shows that the ap-

pellants fully complied with their agreement. We do not hold that the compliance by appellants with their monetary undertakings would have rendered the transaction immune from attack, notwithstanding a failure on their part to furnish appellee with a proper home and to properly care for her. We merely hold that the evidence does not establish a failure on appellants' part to comply with any portion of their undertaking. As said in the case of Moore et al. v. Bugg's Ex'r et al., 274 Ky. 135, 118 S. W. (2d) 185, 189:

> "In these kind of contracts the law does not require perfection, but a reasonably strict and substantial compliance with the contract is sufficient. Watson v. Gilliam, 252 Ky. 762, 68 S. W. (2d) 399. And for the grantor to have cancellation of a deed he must show by substantial evidence that the grantee failed in some substantial respect to comply with the contract and, if grantor without sufficient cause puts it out of the power of the grantees to render the service contemplated he cannot hold them responsible for their failure. Elswick v. Elswick, 220 Ky. 723, 295 S. W. 1070; Bowles' Adm'r v. Harvey, 189 Ky. 598, 225 S. W. 367."

Judgment reversed, with directions to set aside the judgment and dismiss the petition.