# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**July 12, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| GRE INSURANCE GROUP, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Coffee Chancery No. 96-284 |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 01A01-9806-CH-00300 |
| DOUGLAS KEITH "RON JON" REED, | ) | |
| CHRISTOPHER LORANCE, WILLIE | ) | |
| LORANCE, and JERRY A. JONES, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

APPEAL FROM THE CHANCERY COURT OF COFFEE COUNTY
AT MANCHESTER, TENNESSEE

THE HONORABLE JOHN W. ROLLINS, CHANCELLOR

For the Plaintiff/Appellant:

Barbara J Perutelli
Marian L. Kohl
Ashley N. Arnold
Nashville, Tennessee

For the Defendants/Appellees,
Christopher Lorance and Willie
Lorance:

John R. Colvin
Winchester

For the Defendant/Appellee,
Jerry A. Jones:

Christina Henley Duncan
Manchester, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

BEN H. CANTRELL, P.J., M.S.

WILLIAM BRYAN CAIN, J.

## OPINION

In this case, one of the insureds on an automobile liability insurance policy allowed a third party to use his vehicle. The third party then committed an intentional act while operating the vehicle. The insurance company sought declaratory judgment to determine whether its policy required it to defend and provide liability coverage for the insureds. The trial court held that the third party committed an intentional act which excluded coverage to him under the terms of the policy. The trial court also held that the insureds did not commit an intentional act, and that the insurer must provide a defense and liability coverage to the insureds. The insurer appeals as to the insureds; the issue is one of first impression in Tennessee. We affirm.

Appellant GRE Insurance Company ("GRE Insurance") issued an automobile liability insurance policy to Christopher Lorance ("Lorance") and Willie Gene Lorance ("Willie Lorance"), Christopher Lorance's father. The policy provided coverage for a 1997 Hyundai Excel owned by Christopher Lorance. The policy provides:

> COVERAGES A & B - LIABILITY COVERAGE
> We will pay damages for bodily injury . . . or property damage . . . which any insured person becomes legally responsible because of an auto accident . . . . We have no duty to defend any suit or settle any claim for bodily injury or property damage not covered under this policy.
>
> EXCLUSIONS:
> We do not provide Liability Coverage for any person: 1. who intentionally causes bodily injury or property damage . . . .

On June 11, 1995, Christopher Lorance and Appellee Douglas Keith "Ron Jon" Reed ("Reed") were together. They had been drinking. Reed drove the insured vehicle with Lorance's permission. While driving around that evening, the two men saw Appellee Jerry Jones ("Jones") sitting alone on a concrete bridge. Reed stopped and got out of the car; Lorance stayed in the vehicle. After approximately ten minutes, Reed returned to the vehicle, placed it in reverse, shifted it into drive, and hit Jones with the car. Reed drove away from the scene. As a result, Jones sustained serious injuries requiring several surgeries. On April 17, 1996, Reed pled guilty to aggravated assault.

Jones filed suit against Reed, Christopher Lorance and Willie Lorance seeking medical expenses, loss of wages, and pain and suffering. GRE Insurance provided a defense for the Lorances under a reservation of rights. Subsequently, GRE Insurance filed a declaratory judgment action against Reed, the Lorances, and Jones, contending that it is not required to provide either a defense or liability coverage to Reed or the Lorances for a tort action arising out of Reed's intentional act.

The trial court held, in part:

> 1. [T]hat the act of Douglas Keith "Ron Jon" Reed in striking Jerry A. Jones with the Lorance automobile is an intentional act excluded from coverage under the automobile policy; and therefore, the plaintiff, GRE, does not have to provide insurance coverage for the defendant, Reed . . . 2. The Court finds that there was no intentional act on the part of defendants, Christopher Lorance and Willie Gene Lorance; and therefore, plaintiff, GRE, shall provide a defense and liability coverage for defendants, Christopher Lorance and Willie Gene Lorance . . . .

GRE Insurance now appeals the trial court's decision as to the Lorances. Jones and the Lorances filed briefs in this appeal.

There are two issues on appeal: (1) whether GRE Insurance has a duty to defend the Lorances under the policy when a third party, a permissive driver, committed an intentional act excluded by the policy, (2) whether the policy at issue affords liability coverage to the Lorances for a negligent entrustment claim when Reed, the entrustee, committed an intentional act excluded by the policy. The second issue on appeal is an issue of first impression in Tennessee.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d). Questions of law are reviewed without any presumption of correctness. **Presley v. Bennett**, 860 S.W.2d 857 (Tenn. 1993).

GRE Insurance first contends that, because Reed's actions were intentional, and the policy excludes coverage for intentional acts, it has no duty to defend the Lorances.[1] GRE Insurance cites **Allstate Insurance Company v. Freeman**, 443 N.W.2d 734 (Mich. 1989), and argues that the duty to defend the Lorances is derivative and inseparable from its duty to defend Reed. The Lorances argue that an insurer's duty to defend an insured is broader than its obligation to indemnify. They argue that Jones' claim against the Lorances is a negligent entrustment claim and that they committed no intentional act. Jones also argues on appeal that the cause of action for negligent entrustment is a separate and distinct cause of action which "does not rest on imputed negligence but his [Lorance's] own independent negligence in the entrustment."

---

[1]Under Rule 13(b) of the Tennessee Rules of Appellate Procedure, appellate review "extend[s] only to those issues presented for review." Tenn. R. App. P. 13(b). GRE Insurance frames the issue on appeal as follows: "The trial court erred as a matter of law in holding that GRE Insurance Group must provide a defense and liability coverage for the defendants pursuant to their automobile liability policy in view of the fact that the permissive driver committed an intentional act not covered under the automobile policy." Consequently, we do not address the trial court's finding as to Reed, the permissive driver, that GRE Insurance was not obligated to provide Reed a defense or liability coverage under the policy.

The general rule in Tennessee is that an insurer's duty to defend an action against the insured depends on the allegations in the underlying tort complaint against the insured. *First Nat'l Bank v. South Carolina Ins. Co.*, 341 S.W.2d 569, 570 (Tenn. 1960); *see also Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. App. 1996); *I. Appel Corp. v. St. Paul Fire & Marine Ins. Co.*, 930 S.W.2d 550, 552 (Tenn. App. 1996); *Graves v. Liberty Mut. Fire Ins. Co.*, 745 S.W.2d 282, 283 (Tenn. App. 1987). This Court in *Drexel Chemical Company v. Bituminous Insurance Company*, set forth the guideline for determining an insurer's duty to defend its insured:

> It is accepted in the overwhelming majority of jurisdictions that the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined *solely* by the allegations contained in the complaint in [the underlying] action . . . . Accordingly, if the allegations . . . are within the risk insured against and there is a potential basis for recovery, then [the insurer] must defend . . . regardless of the actual facts or the ultimate grounds on which . . . liability to the injured party is predicated . . . . In any event, the pleading test for determination of the duty to defend is *based exclusively on the facts as alleged rather than on the facts as they actually are* . . . .

*Drexel Chem. Co.*, 933 S.W.2d at 480 (quoting *American Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me. 1977)) (emphasis added). Likewise, if any one of the allegations is covered under the policy, the insurer has a duty to defend the insured. *Id.* at 480 (citing *U.S. Fidelity & Guar. Co. v. Murray Ohio Manuf. Co.*, 693 F. Supp. 617 (M.D. Tenn. 1988). In *Dempster Brothers, Inc. v. U.S. Fidelity & Guaranty Company*, 388 S.W.2d 153, 156 (Tenn. App. 1964), this Court held that, where the allegations of the underlying complaint are ambiguous and there is doubt as to whether the allegations state a cause of action sufficient to require insurer to defend, the doubt should be resolved in favor of the insured. *See also Marsh Furniture Co. v. Pennsylvania Manufacturers Assn. Ins. Co.*, No. 02A01-9505-CV-00103, 1996 WL 328713, at *3 (Tenn. App. June 17, 1996).

In this case, the allegations in the underlying tort complaint include allegations of negligence and recklessness on the part of Reed in the operation of the vehicle. Jones alleged that the Lorances were guilty of negligence and reckless conduct in the negligent entrustment of the vehicle to Reed.

The GRE automobile liability policy issued to the Lorances provides:

> We will pay damages for bodily injury . . . or property damage . . . for which any insured person becomes legally responsible because of an auto accident . . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for bodily injury or property damage not covered under this policy.

*** 

> EXCLUSIONS:
> We do not provide Liability Coverage for any person:  1. who intentionally causes bodily injury or property damage . . . .

GRE Insurance argues that it has no duty to defend the Lorances because the negligent entrustment claim against the Lorances is based on the intentional act of Reed, a permissive driver, and that damages as the result of an intentional act are excluded by the policy.  The underlying complaint alleges that Reed's actions were negligent and reckless.  In analyzing the insurer's duty to defend, we look only to the allegations in the underlying complaint. *Drexel*, 933 S.W.2d at 480.  The *Drexel* Court noted that when one of the allegations is covered under the policy, the insurer has a duty to defend the insured "irrespective of the number of allegations that may be excluded by the policy." *Id.* at 480.  Since the Complaint alleges that Reed was negligent, to determine GRE's duty to defend, we need not reach the issue of whether an intentional act by a third party such as Reed means that a claim of negligent entrustment against the named insureds is excluded from coverage.  Clearly GRE Insurance has a duty to provide a defense to the Lorances in the underlying tort action.  The decision of the trial court is affirmed on this issue.

GRE Insurance also argues that the policy does not provide liability coverage to the Lorances based on the intentional act exclusion under the policy.  GRE Insurance notes that the trial court found that Reed's act was intentional and argues that the negligent entrustment claim against the Lorances is based on the intentional act of Reed, and that the policy does not provide coverage for intentional acts.  The Lorances argue that they did not commit an intentional act and that the claim against them is a negligence claim which is not precluded under the policy.

The Supreme Court noted in *St. Paul Fire & Marine Insurance Company v. Torpoco*, that the standard in determining indemnification or ultimate liability of the insurer is not based upon the facts as alleged, but rather upon the true facts. *St. Paul Fire & Marine Ins. Co.*, 879 S.W.2d 831, 835 (Tenn. 1994).  In this case, the facts are undisputed.  Lorance testified that he gave Reed

4

permission to drive the vehicle. Lorance stated that they saw Jones sitting on a bridge and that Reed stopped and got out of the car to talk to Jones. Lorance testified that Reed returned to the vehicle, placed it in reverse, shifted it into drive, and struck Jones with the car. Reed pled guilty to aggravated assault. The trial court found that Reed's act was intentional, and there is not an issue on appeal as to whether this factual finding was in error.

Therefore, we must determine whether Reed's intentional act precludes liability coverage to the Lorances when the claim against them is one of negligent entrustment arising out of Reed's intentional act. In support of its argument, GRE Insurance cites *Allstate Insurance Company v. Freeman*, 443 N.W.2d 734 (Mich. 1989) (concurring and dissenting opinions filed).

In *Freeman*, Alonda Freeman, one of the insureds under a homeowner's policy, shot Mary Kelly. *Freeman*, 443 N.W.2d at 746-47. Kelly filed a tort suit against Mrs. Freeman and her husband, Marshall Freeman, a co-insured under the policy. *Id.* at 747. Kelly alleged that Mr. Freeman negligently entrusted the firearm to Mrs. Freeman. *Id.* The homeowner's policy contained a provision excluding coverage for "any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person." *Id.* at 748. Allstate, the insurer, filed a declaratory judgment action, and the trial court granted Allstate's motion for summary judgment, holding that Allstate had no duty to defend or indemnify Mr. Freeman. *Id.* at 747. The Michigan Supreme Court held that Allstate's duty to defend Mr. Freeman was solely derivative of its duty to defend Mrs. Freeman. *Id.* at 754. The *Freeman* court found first that the intentional and criminal acts exclusion applied to Mrs. Freeman, thus precluding coverage. *Id.* at 750. The court also held that Allstate had no duty to defend or indemnify Mr. Freeman. *Id.* at 754. Mr. Freeman argued that the exclusion was ambiguous as applied to him, and that the policy therefore should be construed in his favor. *Id.* at 751. Mr. Freeman argued that "an insured" could mean "that insured," "the insured,[2]" or "any

---

[2]The majority of courts have interpreted "the insured" in an exclusionary clause to refer to a particular insured and extended liability coverage to an innocent insured. *See American States Ins. Co. v. Borbor*, 826 F.2d 888, 894 (9th Cir. 1987); *Western Cas. & Sur. Co. v. Aponaug Mfg. Co.*, 197 F.2d 673 (5th Cir. 1952); *Arenson v. Nat'l Automobile & Cas. Ins. Co.*, 45 Cal. 2d 81, 286 P.2d 816 (1955); *Fire Ins. Exchange v. Altieri*, 235 Cal. App. 3d 1352, 1 Cal. Rptr. 2d 360 (1991); *National Union Fire Ins. Co. v. Lynette*, 228 Cal. App. 3d 1073, 279 Cal. Rptr. 394 (1991); *Pawtucket Mut. Ins. Co. v. Lebrecht*, 104 N.H. 465, 190 A.2d 420 (1963); *Unigard Mut. Ins. Co. v. Argonaut Ins. Co.*, 20 Wash. App. 261, 579 P.2d 1015 (1978); *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 326 N.W.2d 727 (1982); *but see White v. LeGendre*, 359 So. 2d 652 (La. Ct. App. 1978); *McBride v. Lyles*, 303 So. 2d 795 (La. Ct. App. 1974).

insured.[3]" *Id.* The insurance company argued that "an insured" meant "any insured." *Id.* The *Freeman* court held "that by excluding insurance coverage for injury or damage intentionally caused by 'an insured person,' Allstate unambiguously excluded coverage for damages caused by the intentional wrongful act of any insured under the policies." *Id.* (quoting *Allstate Ins. Co. v. Gilbert*, 852 F.2d 449 (9th Cir. 1988) (citing *Allstate Ins. Co. v. Condon*, 199 Cal. App. 3d 148, 243 Cal. Rptr. 623 (1988))

The *Freeman* court noted that "we look to the underlying cause of the injury to determine coverage and not to the specific theory of liability." *Id.* at 750. The court relied, in part, on several Michigan Court of Appeals decisions in which the insureds sought coverage under a homeowner's policy for claims of negligent entrustment of a vehicle. *Id.* at 750-51. The homeowner's policy excluded coverage for claims arising out of vehicle ownership, use, or operation. *Id.* at 751. The Michigan Court of Appeals in those cases held that there was no coverage for the claims of negligent entrustment of a vehicle under the homeowner's policy because the negligent entrustment theory originated from the ownership, use, or operation of a vehicle, which was excluded by the policy. *Id. See Allstate Insurance Company v. Goldwater*, 415 N.W.2d 2 (Mich. Ct. App. 1987); *State Farm Fire & Cas. Co. v. Huyghe*, 375 N.W.2d 442 (Mich. Ct. App. 1985); *Michigan Mut. Ins. Co. v. Sunstrom*, 315 N.W.2d 154 (Mich. Ct. App. 1981).

To determine this issue on appeal, we first look to the language of the GRE policy issued to the Lorances:

> The analysis used in construing insurance policies is well settled. "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. (citations omitted).

*Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn.1993). If a contract is unambiguous, the meaning of the contract is a question of law for the court. *Petty v. Sloan*, 277 S.W.2d 355, 358 (Tenn. App. 1955).

---

[3]Some courts interpret the language "any insured" in similar exclusions to mean any insured under the policy, thereby excluding coverage for an innocent co-insured. *See American American Family Mut. Ins. Co. v. Mission Medical Group*, 72 F.3d 645 (8th Cir. 1995); *Allstate Ins. Co. v. McCranie*, 716 F. Supp. 1440 (S.D. Fla. 1989); *Western Mut. v. Yamamoto*, 29 Cal. App. 4th 1474, 35 Cal. Rptr. 2d 698 (1994).

Unlike *Freeman* and the cases cited therein, the policy language at issue in this case is as follows: "We do not provide Liability Coverage for *any person*: 1. who intentionally causes bodily injury or property damage . . . ." (emphasis added). We do not find the language "any person" ambiguous. *See Tennessee Farmers Mut. Ins. Co. v. Evans*, 1990 WL 64532, at *2 (Tenn. App. May 18, 1990) (noting, in dicta, that the language "'an insured person'" unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured.") (citing *Travelers Ins. Co. v. Blanchard*, 431 So. 2d 913 (La. App. 1983); *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734 (1989)). *See also Tennessee Farmers Mut. Ins. Co. v. Evans*, 814 S.W.2d 49 (Tenn. 1991). The language in the GRE policy excludes coverage for a particular person, not a particular injury. The person excluded is one who "intentionally causes bodily injury . . . ." In contrast, in *Freeman*, the policy excluded coverage for an *injury* "which is . . . intended by an insured person." *Freeman*, 443 N.W.2d at 748.

In *Sunshine Birds & Supplies, Inc. v. United States Fidelity & Guaranty*, 696 So. 2d 907 (Fla. Dist. Ct. App. 1997, the Florida Court of Appeals held that an intentional act exclusion did not preclude liability coverage for the insureds against claims of negligent supervision, training, and retention. In *Sunshine Birds*, United States Fidelity & Guaranty Company issued a commercial general liability policy to Sunshine Birds & Supplies, excluding from coverage "bodily injury expected or intended from the standpoint of the insured." *Sunshine Birds & Supplies, Inc.*, 696 So. 2d at 908. Two employees allegedly sexually abused two minor children. *Id.* The parents of the children sued Sunshine for negligent supervision, training, and retention of their employees. *Id.* at 908-09. The court held that the claims against Sunshine were negligence claims "which are cognizable causes of action existing under Florida law and none of which have been excluded from coverage under the terms of the policy." *Id.* at 912. The *Sunshine Birds* court found that the claims against Sunshine were not barred by the intentional acts exclusion. *Id.* *See also Prudential Property & Cas. Ins. Co. v. Boylan*, 704 A.2d 597 (N.J. Super. Ct. 1997); *but see Mount Vernon Fire Ins. Co. v. Creative Housing*, 668 N.E.2d 404, 406 (N.Y. 1996) (excluding coverage for negligent supervision and negligent hiring claim because "the operative act giving rise to any recovery is the assault.").

Likewise, Tennessee has long recognized the tort of negligent entrustment of a vehicle by an owner to an incompetent driver. *See V.L. Nicholson Construction Co. v. Lane*, 150 S.W.2d

1069 (Tenn. 1941). In *Nichols v. Atnip*, 844 S.W.2d 655, 659 (Tenn. App. 1992), this Court noted the four elements of negligent entrustment: "(1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that is the proximate cause of injury or damage to another." In *Mathis v. Stacy*, 606 S.W.2d 290, 292 (Tenn. App. 1980), this Court also recognized that "[t]he owner's liability does not rest on imputed negligence but is based on his own negligence in entrusting his automobile to an incompetent driver." *See also Prater v. Burns*, 525 S.W.2d 846, 850 (Tenn. App. 1975) (holding that a "parent's liability rests alone upon whether there was a negligent entrustment of the weapon to the minor" in a negligent entrustment case).

In *Tennessee Farmers Mutual Insurance Company v. Evans*, 814 S.W.2d at 54, our Supreme Court recognized that the policy behind an intentional act exclusion is to "prohibit the use of insurance to provide indemnity for civil tort liability that results from an insured's intentional wrongdoing. Otherwise, a liability policy could be used to wreak havoc at will." In this case, the Lorances did not commit an intentional act. Therefore, finding liability coverage for a negligent entrustment claim based on the intentional act of another insured or a third party does not conflict with the policy considerations articulated in *Evans*.

The policy language in this case excludes coverage for a <u>person</u> "who intentionally causes bodily injury. . . ." The Lorances did not intentionally cause bodily injury to Jones. Therefore, even if Reed's act was intentional, the policy exclusion does not apply to Jones' negligence claim against the Lorances. Accordingly, the trial court's decision that GRE Insurance must provide liability coverage to the Lorances is affirmed.

The decision of the trial court is affimed. Costs on appeal are taxed to the Appellant, for which execution may issue if necessary.

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**BEN H. CANTRELL, P.J., M.S.**

_____
**WILLIAM BRYAN CAIN, J.**